UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JEREMIAH G.,                                                      Case No. 1:23-cv-00851-AR

               Plaintiff,                                  OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Jeremiah G. (his last name omitted for privacy) challenges the Administrative

Law Judge's evaluation for failing to identify specific, clear and convincing reasons for

discounting his subjective symptom testimony and the lay witness testimony. Because the court concludes that the ALJ did not err, the Commissioner's decision is affirmed.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) on January 21, 2021, alleging disability beginning on June 11, 2017. (Tr. 64, 79.) His claims were initially denied on March 25, 2021, and again upon reconsideration on December 8, 2021. (Tr. 77-78, 92-93, 171-76.) Afterwards, plaintiff filed for a hearing that was held before the ALJ on June 2, 2022. (Tr. 37.)

In denying plaintiff's applications for DIB and SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 16.) At step two, the ALJ determined that he had the following severe impairments: "complex regional pain syndrome s/p right femoral fracture" and "right hip impingement syndrome." (Tr. 16.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 19.)

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    To determine if a claimant is disabled within the meaning of the Social Security Act, the ALJ must apply a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process ends when the ALJ can determine that the claimant is or is not disabled. The burden of proof is on the claimant at steps one through four, and on the agency at step five. *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020); *see also Woods v. Kijakazi*, 32 F.4th 785, 788 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017] changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process.'").

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC),

20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform light

work with the following limitations: occasionally climb ladders, ropes, and scaffolds; and

occasionally stoop, kneel, crouch, and crawl. (Tr. 20).

At step four, the ALJ determined that plaintiff is unable to perform any past relevant

work as a security guard, roustabout, lubrication tech, or warehouse worker. (Tr. 29).

Considering his RFC, the ALJ found at step five that jobs exist in significant numbers in the

national economy that plaintiff can perform, including such representative occupations as

parking lot cashier, office helper, and hand packager inspector. (Tr. 30).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is

"more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

and citation omitted). To determine whether substantial evidence exists, the court must weigh all

the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v.

Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.    *Plaintiff's Symptom Testimony*

Determining the credibility of a claimant's testimony regarding subjective reports of pain

or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*,

871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if the record lacks affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

In his applications, plaintiff contends that he cannot engage in full-time, competitive employment because of his physical and mental health conditions caused by a motorcycle accident on June 11, 2017. (Tr. 299, 303.) Specifically, the accident caused complex regional pain syndrome (CRPS) of the right femur. (Tr. 303.) Plaintiff reported that his physical pain affected his mental health, and he saw Angie Cronin, Psy.D., for anxiety, depression, and chronic pain. (Tr. 454-506.) On appeal, however, plaintiff does not challenge the ALJ's analysis of his mental health issues. In his July 2021 function report, plaintiff stated that he cannot sit or stand for more than 20 to 30 minutes at a time. (Tr. 317.) Plaintiff wrote that his "pain frequently requires [him] to lay down for several hours in order to cope with it" and makes it "hard to focus on tasks." (Tr. 317.) Plaintiff described that his daily activities include doing the dishes,

watching television, and taking out the trash, so long as it is not too heavy and he can use his cane. (Tr. 318, 320.) Plaintiff indicated that he relies on a cane, and he has difficulty lifting, squatting, standing, walking, bending, sitting, kneeling, climbing stairs, completing tasks, and concentrating. (Tr. 322-23.)

At his hearing, plaintiff testified that he can only sit for 10 minutes before experiencing pain in his back and right leg. (Tr. 52.) Plaintiff stated that he can stand in one spot for about 10 to 20 minutes, constant pain makes postural activities difficult to perform, and he needs to lie down two or three times a day. (Tr. 52-54.) Plaintiff testified that his medications cause significant side effects, such as making him drowsy and dizzy, which makes him embarrassed and causes him to lose focus, his average pain level is an eight out of 10, and that pain affects his sleep. (Tr. 44, 47.)

The ALJ discounted plaintiff's subjective symptom testimony because: (1) plaintiff's activities of daily living are inconsistent with his claimed limitations; (2) his treatment history was inconsistent with claims of debilitating pain; and (3) his medical records show largely normal objective findings during medical appointments.

### 1. *Activities of Daily Living*

An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal activities of daily living (ADLs). *See* 20 C.F.R. § 404.1529(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ( "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ discounted plaintiff's testimony because his activities of daily living were inconsistent with his claims of debilitating pain symptoms. (Tr. 26.) The ALJ took issue with plaintiff's ability to drive. (Tr. 26.) Specifically, the ALJ explained that the ability to drive safely "requires the ability to sit, use his upper and lower extremities and pay attention sufficiently to traverse the road safely." (Tr. 26.) The ALJ also cited a November 2020 behavioral health follow-up visit, that stated that plaintiff "has also been staying busy and getting out of the house more[,]" and "has been going to the gym with a new friend and this has been helpful." (Tr. 26, citing Tr. 499.) The ALJ also cited a physical therapy treatment note from May 2021 where plaintiff reported "being able to work in the yard with a weed eater for four hours in the past two days." (Tr. 26, citing Tr. 1624-25.) The ALJ also discussed how at physical therapy in June 2021, plaintiff reported he was able to walk two to three miles shopping at big box stores without using a cane. (Tr. 26, citing Tr. 1620.) Lastly, the ALJ mentioned that plaintiff stopped behavioral treatment due to being "busy with his son's soccer season." (Tr. 26, citing Tr. 2181.) Based on those activities, the ALJ determined that his "reported activities of daily living require physical abilities, which are generally inconsistent with his reported functionality." (Tr. 26.) The Court finds that the ALJ's findings are supported by substantial evidence, are a reasonable interpretation of the record, and will not be disturbed.

Plaintiff argues that the ALJ erred in relying on his ability to drive because "when he originally applied, [p]laintiff wrote in his [2021] function report that his license was suspended and that he did not drive, because he had cramps and spasms that make driving dangerous." (Pl.

Br. at 14, citing Tr. 109, 128, 320, 342.) Plaintiff acknowledges that he testified at the hearing in June 2022 that he drives to the grocery store, but argues this is limited to short trips. (Pl. Br. at 14, Tr. 43.). Plaintiff asserts that his "ability to engage in activities when pain free does not undermine his testimony, whether driving for short trips to the grocery store, walking for two miles once in a four-year period, or even using a weed-eater for four hours." (Pl. Br. at 14.) Lastly, plaintiff asserts that the ALJ's reasons for rejecting his subjective symptom testimony "ignore[s] the ruling regarding RSDS/CRPS." (Pl. Br. at 14, citing SSR 03-02p.)

The Court is not persuaded by plaintiff's arguments. Regarding plaintiff's ability to drive, the hearing testimony is more recent compared to his function report he filled out over a year before the hearing in February 2021, and is thus the more persuasive indication of plaintiff's driving abilities. Even considering that plaintiff only drove for short trips to the grocery store, as his testimony reflects, the ALJ's other reasons for discounting plaintiff are valid. (Tr. 43.) Being able to walk for miles at a time without a cane, perform yardwork, and be involved in his son's soccer season are all inconsistent with the extreme limitations plaintiff attested to at the hearing, such as being limited to sitting for 10 minutes or walking for 20 minutes.

Plaintiff's assertion that the ALJ "ignored" SSR 03-02p regarding RSDS/CRPS is undeveloped. (Pl. Repl. Br at 4.) Plaintiff simply asserts that "transient findings are characteristic of RSDS/CRPS and cites the ruling as authority, without explanation. (Pl. Repl. Br. at 4.) Plaintiff contends that his ability to engage in activities when pain free does not undermine his testimony, and that as recently as April 21, 2022, he was unable to sit longer than 15 minutes or walk further than one block. (Pl. Repl. Br at 4.) Plaintiff appears to suggest that the ALJ ignored the longitudinal record. As discussed in greater detail below, the ALJ considered the entire

record, including his CRPS symptoms. Thus, the court cannot conclude the ALJ erred in

assessing plaintiff's daily activities.

### 2. *Improvement with Treatment*

A claimant's improvement with treatment is "an important indicator of the intensity and

persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that

can be controlled effectively with medication are not disabling for the purpose of determining

eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006). Symptom improvement, however, must be weighed within the context of an "overall

diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester*

*v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not

inconsistent with disability.").

Here, the ALJ relied on reports of pain management and physical therapy treating

plaintiff's CRPS symptoms. (Tr. 23.) The ALJ cited treatments notes from 2017 to 2021

documenting improvement with treatment. (Tr. 21-27.) In September 2017, three months after

his motorcycle accident, plaintiff reported that his symptoms improved and that he had been off

narcotics for two weeks and was using Aleve. At his six month follow up appointment, he stated

that he continued to improve and the ALJ acknowledged that he had less pain in the left leg but

still had quite a bit of pain in the right thigh at the fracture site that did not appear to be

improving. (Tr. 21, citing Tr. 389.) And in January 2018, the ALJ observed, plaintiff "opted to

undergo surgery to dynamize the nail and place a bone growth simulator," that "his treatment

provider noted that he was 'ok to work,'" and that his "February and March 2018 follow up

appointments showed overall improvement and non-antalgic gait without a limp, though he

reported right leg pain." (Tr. 21 citing Tr. 393, 395, 753.) The ALJ also discussed how on March 3, 2020, plaintiff "underwent a lumbar sympathetic chain block on the right and on his six-hour pain diary he said his pain was a zero throughout." (Tr. 23.) The ALJ also cited many physical therapy treatment notes from 2020 showing improvement in plaintiff's pain symptoms. (Tr. 23-24.) For example, at physical therapy in May 2020, plaintiff reported that "if he stays active he is fine, but if not active, he gets tired easily. (Tr. 24, citing Tr. 590.) The ALJ acknowledged that physical therapy treatment notes indicated that he continued to have on and off pain, but overall "he feels he is having more good days compared to harder days." (Tr. 24, citing Tr. 479.) The ALJ addressed that plaintiff was discharged from physical therapy in June 2020. (Tr. 24, citing Tr. 573-74.)

Given the above, the ALJ's findings are supported by substantial evidence, and the ALJ reasonably could conclude that plaintiff's RSDS/CRPS pain symptoms improved with treatment.

### 3. Inconsistency with Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at \*7-8. A lack of objective medical evidence, however, may not form the sole basis for discounting a claimant's testimony. *Redick v. Chater*, 157 F.3d 715, 722 (1998); *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at \*4 (D. Or. Nov. 10, 2018). But when objective medical evidence is coupled with other permissible reasons, it may be used to discount a claimant's testimony. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004); *Adaline S.G. v. Comm'r Soc. Sec. Admin.*, Case No. 6:20-cv-01129-AC, 2021 WL 5316987, at \*3 (D. Or. Nov. 15, 2021).

Here, the ALJ described inconsistencies between plaintiff's alleged symptoms and the objective medical evidence. The ALJ initially acknowledged plaintiff's CRPS diagnosis in February 2020 after he had a resurgence of pain in his right femur. (Tr. 20-21, citing Tr. 451-52.) However, the ALJ discussed imaging from March 2020 that showed plaintiff's right femur fracture had healed and there were no complications. (Tr. 22, citing Tr. 405.) The ALJ discussed how examinations regularly showed normal strength and reflexes, and no evidence of nerve root irritation when he raised his legs. (Tr. 23, citing Tr. 26-27, 405, 446, 448-49, 452.)

Again, plaintiff asserts that "the regulations recognize that the defining character of RSD/CRPS is the presence of persistent complaints of pain that are out of proportion to the severity of any underlying medical conditions" and that "transient findings" are characteristic of RSDS/CRPS. (Pl. Br. at 13, citing SSR 03-02p.) The ALJ discussed the longitudinal findings showing that the objective medical evidence was inconsistent with plaintiff's testimony. For example, the ALJ discussed plaintiff's physiatrist treatment notes indicating that he did not think plaintiff's symptoms were due to CRPS because his "primary pain generator is localized exactly over the scar from the compound fracture/IM nail insertion site" and "the tissues in this area show limited mobility." (Tr. 24, citing Tr. 615.) The ALJ also discussed that after plaintiff was discharged from physical therapy designed to work on breaking down scar tissue, his muscle strength had improved, and he had normal gait and station. (Tr. 24, citing Tr. 569, 614.) The ALJ considered plaintiff's physical therapy notes that showed by February 2021, he was no longer presenting with signs of CRPS. (Tr. 26, citing Tr. 1630.)

Contrary to plaintiff's suggestion, SSR 03-02p requires that the ALJ view the record as a whole to establish a longitudinal picture of his functioning. SSR 03-02p, *available at* 2003 WL

22399117, at *7 (Oct. 20, 2003). The ALJ did so here, explaining how plaintiff's daily activities, treatment history, and medical evidence were inconsistent with his allegations. The ALJ's findings are supported by substantial evidence and are reasonable interpretation of the record, and will not be disturbed. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that even if evidence is susceptible to more than one rational interpretation, ALJ decision must be upheld).

**B.    *Lay Witness Testimony***

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment" (emphasis in original). An ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Nguyen*, 100 F.3d at 1467 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63).The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

Page 11 – OPINION AND ORDER

In responding to plaintiff's argument that the ALJ failed to consider the testimony of his fiancé, Rachel Perrotti, the Commissioner argues that under new regulations governing the evaluation of medical evidence, an ALJ need not provide any reason for rejecting lay witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). In the Commissioner's view, lay testimony is a "nonmedical source" and ALJ's are not required to articulate how that evidence was considered.

The Court is not persuaded by the Commissioner's argument. The Ninth Circuit has not yet decided whether the regulations relating to medical evidence affect an ALJ's analysis of lay witness testimony. The majority of district courts in this circuit, however, have concluded that the new regulations do not eliminate an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, Case No. 3:22-cv-05855-GJL, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, Case No. CV-22-00321-TUC-LCK, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, Case No. 5:23-cv-00006-BFM, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, Case No. 1:22-cv-00013-DKG, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

The court agrees with the majority's view. Although the new regulations do not require ALJ's to analyze nonmedical sources using the same criteria as medical sources, those

regulations did not eliminate the ALJ's obligation to review and address lay witness testimony. The new regulations did not overrule binding Ninth Circuit precedent that an ALJ must address lay witness testimony and provide germane reasons to discount it. *See Woods*, 32 F.4th at 790 ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations." (simplified)). Furthermore, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L.S.*, 2023 WL 5611408, at *5. (citing 20 C.F.R. §§ 416.913(a), 416.929(a)). Thus, the contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[ ] and the rule [that] the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, Case No. C22-1821-BAT, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

As plaintiff argues, the ALJ did not address the lay witness testimony, and therefore, erred. The court considers whether that error is harmless.

In her report, Perrotti's statements mirrored plaintiff's report: plaintiff can't work because of pain, could not stand or walk for more than 15 minutes, his pain improved when lying down and was worsened by walking, his pain makes it difficult for him to concentrate, and that he spends most days in bed because of his pain. (Tr. 376.) Plaintiff testified that he needs help with showering and dressing himself, which is like Perrotti's report that plaintiff depends on others for assistance with activities of daily living, including getting in and out of the shower and

dressing. (Tr. 54-55, 376.)

Plaintiff asserts that his fiancé described limitations that exceed the limitations he alleges--he contends that he was only able to sit or stand for 20 to 30 minutes whereas Perrotti wrote that he could not stand or walk for more than 15 minutes. (Pl. Br. at 10, 14, citing Tr. 317, 376.)  Yet at the hearing, plaintiff stated that he can only stand in one spot for about 10 to 20 minutes. (Tr. 52.) Therefore, plaintiff's more recent allegations are like Perrotti's report because they both discussed how some days plaintiff does not get out of bed, he depends on others for most household chores, and that his medication makes him "groggy" and unable to focus. (Tr. 51, 53, 376.)

The symptoms testified to by Perrotti are largely consistent with plaintiff's own testimony. Although the ALJ erred by failing to address the lay witness testimony, as explained above, the court has determined the ALJ properly discounted that testimony with clear and convincing reasons supported by substantial evidence. Under Ninth Circuit precedent, those reasons apply with equal force to discount the lay witness statement from Perrotti in this context. *Molina*, 674 F.3d at 1117. Therefore, the ALJ's error is harmless as it is inconsequential to the ultimate nondisability determination.

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

Page 14 – OPINION AND ORDER

**CONCLUSION**

For the above reasons, the court AFFIRMS the Commissioner's final decision, and this action is DISMISSED.

ORDERED on May 28, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge